```
                                              ┌─────────────────────────────────┐
                                              │ USDC SDNY                        │
                                              │ DOCUMENT                         │
                                              │ ELECTRONICALLY FILED             │
                                              │ DOC #: _____          │
                                              │ DATE FILED: __3/25/2019__        │
                                              └─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                        :                    Chapter 11
                                              :
WESTINGHOUSE ELECTRIC COMPANY                 :         Bankruptcy Court No. 17-10751
LLC, et al.,                                  :                      (MEW)
                                              :
                            Debtors.          :             (Jointly Administered)
-------------------------------------------------------X
AZZ, INC. and THE CALVERT COMPANY,            :
INC.,                                         :
                                              :
                            Plaintiffs,       :
                                              :
            -v-                               :
                                              :
SOUTHERN NUCLEAR OPERATING                    :         District Court No. 18-CV-3942 (VSB)
COMPANY, INC., GEORGIA POWER                  :
COMPANY, OGLETHORPE POWER                     :               **OPINION & ORDER**
CORPORATION, MUNICIPAL ELECTRIC              :
AUTHORITY OF GEORGIA, THE CITY OF            :
DALTON, GEORGIA, and WECTEC                   :
GLOBAL PROJECT SERVICES, INC. n/k/a           :
STONE & WEBSTER, INC.,                        :
                                              :
                            Defendants.       :
-------------------------------------------------------X

Appearances:

Scott Michael Kessler
Susan Florence Balaschak
Akerman LLP
New York, New York
*Counsel for Plaintiffs*

Anna Kordas
Jones Day
New York, New York
*Counsel for the Vogtle Defendants*

John Thaddeus Dorsey
Young Conaway Stargatt & Taylor LLP
Wilmington, Delaware
*Counsel for Defendant WECTEC*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Plaintiffs AZZ, Inc. and The Calvert Company, Inc. filed this adversary proceeding in the United States Bankruptcy Court for the Southern District of New York, Adv. Pro. No. 18-1016 (MEW) (Bankr. S.D.N.Y.), against Defendants Southern Nuclear Operating Company, Inc. ("SNC"); Georgia Power Company, for itself and as agent for Oglethorpe Power Corporation, Municipal Electric Authority of Georgia, and the City of Dalton, Georgia (collectively, the "Owners" and, together with SNC, the "Vogtle Defendants"); and WECTEC Global Project Services, Inc. n/k/a Stone & Webster, Inc. ("WECTEC"). Plaintiffs' Complaint alleges, in pertinent part, that Defendants failed to pay Plaintiffs for certain services performed by Plaintiffs at the Alvin W. Vogtle Electric Generating Plant in Waynesboro, Georgia. Before me are Defendants' motions to withdraw the bankruptcy reference for certain claims and counterclaims in the adversary proceeding, and to transfer those claims to the United States District Court for the Southern District of Georgia. Because the claims and counterclaims for which Defendants seek to withdraw the reference are not core bankruptcy claims—or, to the extent they could be viewed as core claims, will not affect WECTEC's bankruptcy—Defendants' unopposed motion to withdraw the reference is GRANTED. With regard to the motion to transfer, because I find that Georgia is a more appropriate venue than New York in which to adjudicate the withdrawn claims, Defendants' motion to transfer the action to the Southern District of Georgia is also GRANTED.

## I.      **Factual Background**

In 2008, Defendant Georgia Power Company, for itself and as agent for the other Owners, entered into an Engineering, Procurement and Construction Agreement (the "EPC Agreement") with Westinghouse Electric Company, LLC ("Westinghouse") and CB&I Stone &

Webster Construction, Inc. ("CB&I")[1] for the engineering, procurement, construction, and startup of two nuclear reactors at the Alvin W. Vogtle Electric Generating Plant in Waynesboro, Georgia (the "Vogtle Project").  (Defs.' Transfer Br. ¶ 1.)[2]  On December 10, 2015, Plaintiff AZZ, Inc. ("AZZ"), a Mississippi corporation, and CB&I entered into a subcontract under which AZZ agreed to provide certain services as part of the Vogtle Project (the "Vogtle Subcontract"). (Compl. ¶¶ 22–23.)  Separately, on August 20, 2010, AZZ and CB&I had entered into an agreement under which AZZ agreed to provide certain equipment for the Virgil C. Summer Nuclear Generating Station located in Jenkinsville, South Carolina (the "VC Summer Subcontract").[3]  (Id. ¶¶ 28–29.)

On March 29, 2017, Westinghouse and twenty-nine of its affiliates, including WECTEC (collectively, the "Debtors"), filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief under chapter 11 of the Bankruptcy Code, *see In re Westinghouse Elec. Co.*, No. 17-10751 (MEW) (Bankr. S.D.N.Y.). (*Id.* ¶ 33.)  On March 30, 2017, the Bankruptcy Court entered an Interim Assessment Agreement ("IAA")[4] between the Debtors and the Owners, under which the Owners agreed to pay all costs accrued by the Debtors for services performed and goods provided by subcontractors—including AZZ—relating to the Vogtle Project during the Interim Assessment Period.  (*Id.* ¶¶ 34–35.)  The

---

[1] Defendant WECTEC acquired CB&I's nuclear construction and integrated services business on January 4, 2016. (Compl. ¶¶ 18–20, 25.)  "Compl." refers to Plaintiffs' Complaint, filed February 16, 2018, (Doc. 8-3).

[2] "Defs.' Transfer Br." refers to the Memorandum of Law in Support of Defendants' Motion to Transfer Case to the United States District Court for the Southern District of Georgia, filed May 22, 2018, (Doc. 9).

[3] The VC Summer Subcontract, which is unrelated to the Vogtle Project, is the subject of Counts III and IV of Plaintiffs' Complaint.  (*See* Compl. ¶¶ 147–161.)  Because debtor WECTEC acquired CB&I's nuclear construction business, (*id.* ¶ 25), WECTEC is implicated in Counts III and IV, but the remaining Defendants are not.  Defendants do not seek to withdraw the bankruptcy reference with respect to these two counts.

[4] The IAA is filed at Doc. 68-2 of the underlying bankruptcy proceedings, *In re Westinghouse Elec. Co.*, No. 17-10751.

Interim Assessment Period began on March 29, 2017 and was extended eight times before terminating on July 27, 2017.  (*Id.* ¶¶ 36–47.)  By virtue of the IAA, Defendant WECTEC is not responsible for any costs relating to Plaintiffs' work on the Vogtle Project that accrued during the Interim Assessment Period—i.e., between March 29, 2017 and July 27, 2017.

On June 9, 2017, the Owners, WECTEC, and Westinghouse entered into a Services Agreement, pursuant to which WECTEC and Westinghouse transferred control of the construction of the Vogtle Project to the Owners.  (Defs.' Withdrawal Br. ¶ 4.)[5]  On motion of the Debtors, the Bankruptcy Court entered an order authorizing the Debtors to reject the EPC Agreement effective July 20, 2017.  (Compl. ¶¶ 49–50.)  The Bankruptcy Court entered another order, also on motion of the Debtors, authorizing the Debtors to reject the Vogtle Subcontract effective July 27, 2017.  (*Id.* ¶ 52.)

In addition, on July 27, 2017, SNC, acting for itself and as agent for the Owners, entered into a Subcontractor Bridge Agreement (the "Bridge Agreement") with Plaintiff The Calvert Company, Inc. ("Calvert"), a Mississippi-based subsidiary of Plaintiff AZZ, pursuant to which Calvert agreed to provide all labor, materials, equipment, and services for the Vogtle Project to the same extent contemplated by the Vogtle Subcontract.  (*Id.* ¶¶ 53, 59.)  SNC and the Owners agreed to pay Calvert for that work.  (*Id.* ¶ 60.)  According to Plaintiffs, Calvert fully performed its duties under the Vogtle Subcontract and Bridge Agreement.  (*Id.* ¶¶ 65–66.)  On October 6, 2017, SNC provided notice of its intent to terminate the Bridge Agreement, effective November 6, 2017.  (*Id.* ¶ 67.)  By virtue of the Bridge Agreement, Defendant WECTEC is not responsible

---

[5] "Defs.' Withdrawal Br." refers to the Memorandum of Law in Support of Defendants' Motion for Withdrawal of the Reference for Certain Claims in the Adversary Proceeding, filed May 2, 2018, (Doc. 1-1).

for any costs relating to Plaintiffs' work on the Vogtle Project that accrued between July 27, 2017 and November 6, 2017.

Plaintiffs submitted a total of eight invoices to WECTEC and SNC for work performed under the Vogtle Subcontract and the Bridge Agreement between July and November 2017, and three invoices to WECTEC for work performed under the unrelated VC Summer Subcontract between May and July 2017.  (*Id*. ¶¶ 70–132.)  According to Plaintiffs, each of those invoices remains unpaid.  (*Id.*)

## II.   Procedural History

On February 16, 2018, Plaintiffs filed their Complaint, which alleges six claims arising from Defendants' failure to pay the eleven above-referenced invoices.  (Compl. ¶¶ 134–84.) Because Defendant WECTEC is a debtor in the underlying bankruptcy proceeding, *In re Westinghouse Elec. Co.*, No. 17-10751, Plaintiffs filed their Complaint as an adversary proceeding in the Bankruptcy Court, Adv. Pro. No. 18-1016.  (*Id.* ¶ 1.)

Counts I, II, V, and VI of Plaintiffs' Complaint (the "Vogtle Claims") arise out of Plaintiffs' work on the Vogtle Project pursuant to the Vogtle Subcontract and the Bridge Agreement during the July 2017 to November 2017 time period.  (*Id.* ¶¶ 134–46, 162–84.) Count II alleges that WECTEC breached the Vogtle Subcontract and that Plaintiffs suffered damages of no less than $678,861.43 as a result of that breach, (*id*. ¶¶ 140–46), while Count I seeks a declaratory judgment that the damages alleged in Count II constitute an administrative expense claim against WECTEC's bankruptcy estate, (*id*. ¶¶ 134–39).  Counts V and VI allege that the Vogtle Defendants breached the Vogtle Subcontract (Count V) and the Bridge Agreement (Count VI).  (*Id*. ¶¶ 162–84.)  Counts III and IV arise out of the unrelated VC

Summer Subcontract, involve WECTEC only, and do not implicate any of the Vogtle Defendants.  (*Id.* ¶¶ 147–61.)

On April 30, 2018, the Bankruptcy Court entered a Stipulation, Agreement and Order Between Debtors and Vogtle Owners Regarding Adversary Complaint (the "Stipulation," Doc. 8-4), pursuant to which the Owners agreed to defend and indemnify WECTEC against the Vogtle Claims asserted against WECTEC (Counts I and II), and to be fully liable for any payments required in connection with any settlement of such claims.  (*Id.* ¶¶ 1–2.)  In addition, pursuant to the Stipulation, WECTEC assigned to the Owners all of WECTEC's claims against Plaintiffs related to services performed or goods provided, and all warranties related to those goods and services, in relation to the Vogtle Project on or after March 29, 2017.  (*Id.* ¶ K.)  By virtue of the Stipulation, WECTEC has no financial stake in litigating the Vogtle Claims.  (*See id.* ¶ 1 ("[The Owners] shall (a) retain and pay counsel on behalf of WECTEC to defend the Vogtle Claims, (b) fully indemnify, hold harmless and defend WECTEC against such claims, and (c) be fully liable and obligated to make any payments required in connection with any settlement of the Vogtle Claims, and the Debtors shall not use any portion of the [bankruptcy estate's] Funds to pay the Vogtle Claims.").)[6]

The Vogtle Defendants filed their Answer to Plaintiffs' Complaint on April 29, 2018. (Doc. 8-5.)  The Answer notes that "WECTEC has no financial stake with respect to [the Vogtle Claims] because the Vogtle Defendants are responsible for payment of any such claims."  (*Id.* at 5.)  The Answer also contains numerous counterclaims (the "Vogtle Counterclaims"), which

---

[6] The Stipulation does not extend to Counts III and IV of Plaintiffs' Complaint, relating to the VC Summer Subcontract.  (*See* Doc. 8-4, ¶ 4 ("For the avoidance of doubt, [the Owners'] agreement regarding defense and indemnification shall be limited to the Vogtle Claims.  Any claims in the Complaint related to any other project, including but not limited to the construction on Units 2 & 3 of the Virgil C. Summer Project in South Carolina, are expressly excluded from [this] agreement.").)

allege, among other things that Plaintiffs breached the Vogtle Subcontract and Bridge Agreement, and were negligent in their construction and design relating to the Vogtle Project. (*Id.* at 42–47.)

On May 2, 2018, Defendants filed a motion before this Court to withdraw the bankruptcy reference with respect to the Vogtle Claims and the Vogtle Counterclaims.  (Doc. 1.)  Plaintiffs, who do not oppose withdrawing the reference with respect to those claims, filed their response on May 29, 2018.  (Doc. 11.)  Defendants filed their reply on June 5, 2018.  (Doc. 13.)  On May 22, 2018, Defendants also moved to transfer the Vogtle Claims and the Vogtle Counterclaims to the United States District Court for the Southern District of Georgia.  (Docs. 7–9.)  Plaintiffs filed their opposition to Defendants' transfer request on June 27, 2018, (Doc. 14), and Defendants filed their reply on July 16, 2018, (Doc. 16).

### III.   Discussion

#### A.   *Motion to Withdraw the Bankruptcy Reference*

Before I may address Defendants' motion to transfer the instant action to the United States District Court for the Southern District of Georgia, (Doc. 7), I must first consider Defendants' unopposed motion to withdraw the bankruptcy reference for the Vogtle Claims (Counts I, II, V, and VI) and the Vogtle Counterclaims in the underlying adversary proceeding, (Doc. 1).  Because Defendants request transfer of these claims to another district court—as opposed to another bankruptcy court—the bankruptcy reference must be withdrawn as to those claims before the claims may be transferred.  *See Nw. Airlines, Inc. v. City of Los Angeles (In re City of Los Angeles)*, 384 B.R. 51, 59 (S.D.N.Y. 2008) ("Since the Bankruptcy Court lacks the authority to order the specific relief that the City seeks, namely a transfer of the Northwest

Action to [the United States District Court for the Central District of California] . . . , this Court is the most appropriate Court to determine the City's request.").

### 1. Legal Standard

District Courts have "original but not exclusive jurisdiction" over all bankruptcy proceedings. *See* 28 U.S.C. § 1334(b). In this district, all proceedings—including adversary proceedings—arising under title 11 of the United States Code are automatically referred to the United States Bankruptcy Court for the Southern District of New York. *See* Amended Standing Order of Reference, M10-468 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.) (referring all bankruptcy matters to the bankruptcy court pursuant to 28 U.S.C. § 157(a)). Once a title 11 proceeding has been referred to the bankruptcy court, the district court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which sets forth the standards for mandatory and permissive withdrawal. 28 U.S.C. § 157(d) provides, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Section 157 does not define the term "cause." *See S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996).

In deciding whether there is "cause" to withdraw the bankruptcy reference, a district court considers several factors, including "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." *Id.* (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). A claim qualifies as a "core" bankruptcy claim where it "invokes a substantive right under title 11, or could only arise in the context of a bankruptcy case." *Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008).

Although withdrawal of the reference is less often appropriate where a claim falls within a bankruptcy court's "core" jurisdiction, *see* 28 U.S.C. § 157(b)(2), a district court has the discretion to nonetheless withdraw the reference under those circumstances. *See, e.g.*, *LTV Steel Co., Inc. v. City of Buffalo, N.Y. (In re Chateaugay Corp.)*, No. 00 CIV. 9429(SHS), 2002 WL 484950, at *6 (S.D.N.Y. Mar. 29, 2002) (noting that a determination that a matter is "core" is "not dispositive, and in the final analysis, the critical question is efficiency and uniformity" (internal quotation marks omitted)).

## 2. Application

Plaintiffs do not oppose Defendants' request to withdraw the bankruptcy reference with respect to the Vogtle Claims and the Vogtle Counterclaims, (*see* Doc. 11), and I conclude that withdrawal is appropriate here.

I first conclude that Counts V and VI—which are claims against the Vogtle Defendants relating to their alleged breaches of the Vogtle Subcontract and the Bridge Agreement—are not "core" claims in the bankruptcy proceeding. *See In re New 118th LLC*, 396 B.R. at 890 (finding that "garden-variety state law claim[s] between non-debtor parties" are non-core); *see also Scott v. Am. Sec. Ins. Co. (In re Scott)*, 572 B.R. 492, 521 (Bankr. S.D.N.Y. 2017) (holding that state-law crossclaims between non-debtors do not fall within bankruptcy court's core jurisdiction). The same is true of the Vogtle Counterclaims, which are brought by the Vogtle Defendants against Plaintiffs.[7]  (*See* Doc. 8-5, at 42–47.)  Regardless of whether—as Defendants contend—the Bankruptcy Court lacks jurisdiction over these claims, (*see* Defs.' Withdrawal Br. ¶¶ 19, 22),

---

[7] While Counterclaim II alleges a breach of the Vogtle Subcontract as to WECTEC, (*see* Doc. 8-5, at 43–44), because WECTEC assigned all of its counterclaims to the Vogtle Defendants, (Doc. 8-4, ¶ K), the resolution of this counterclaim will have no effect on WECTEC's bankruptcy case.

the fact that they are garden-variety state law claims between non-debtor parties weighs in favor of withdrawing the reference.

Defendants concede that Counts I and II may be considered core claims in WECTEC's bankruptcy proceedings:  Count II asserts a breach of contract claim against WECTEC and Count I requests a declaratory judgment that the resulting damages constitute administrative expenses in WECTEC's chapter 11 case.  (Compl. ¶¶ 134–46.)  However, Defendants correctly point out that the ultimate outcome of those claims will have no effect on WECTEC's bankruptcy proceedings because the Owners have agreed to defend and indemnify WECTEC with respect to these claims.  Therefore, under the circumstances presented in this case, any concerns relating to the withdrawal of the reference with regard to these arguably core claims do not apply.

I further conclude that the remaining *Orion* factors support withdrawal of the reference. Plaintiffs do not contend that Defendants are engaging in forum-shopping.  In addition, because this adversary proceeding is at an early stage in which little or no discovery has taken place and no extensive motion practice has come before the Bankruptcy Court, withdrawing the reference will not lead to any "undue delay or require any duplication of effort."  *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011) (withdrawing the reference, in part because "no discovery ha[d] taken place, and no case management plan or other course of proceeding ha[d] been agreed on").  Moreover, withdrawing the reference will conserve the resources of the Bankruptcy Court and allow that court to focus its attention on core claims that do affect WECTEC's bankruptcy proceedings, thereby facilitating the timely administration of the Debtors' chapter 11 reorganization.  *See, e.g.*, *Official Comm. of Asbestos Claimants v. GI Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 217–18 (D.N.J. 2003)

(withdrawing adversary proceeding involving only state-law claims against a non-debtor and finding it "in the Court's best interest to adjudicate the nonbankruptcy dispute once, while the Bankruptcy Court continues to administer the chapter 11 reorganization and conduct other common bankruptcy proceedings").

Finally, because WECTEC has no financial stake in Counts I, II, V, and VI but does have a stake with respect to Counts III and IV, *see supra* n.6, I find it appropriate to withdraw the reference as to some but not all counts in the adversary proceeding. *See, e.g.*, *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 427 F. Supp. 2d 202, 204 (N.D.N.Y. 2006) (noting that the reference had been withdrawn with regard to certain claims asserted in an adversary proceeding but not as to other claims asserted in the same proceeding), *vacated in part on other grounds sub nom. Christine Falls Corp. v. Algonquin Power Fund, Inc.*, 401 F. App'x 584 (2d Cir. 2010); *see also* 28 U.S.C. § 157(d) (allowing for withdrawal of proceedings "in whole or in part"). This is not a situation in which there is a "substantial factual overlap among the various claims and Defendants" such that all claims should be adjudicated in a single action for the sake of judicial efficiency. *See Messer v. Magee (In re: FKF 3, LLC)*, No. 13-CV-3601 (KMK), 2016 WL 4540842, at *20 (S.D.N.Y. Aug. 30, 2016) (withdrawing the reference as to the entire adversary proceeding given the overlap among the claims that required withdrawal and those that might have remained in the bankruptcy court). The Vogtle Claims—Counts I, II, V, and VI—relate to the Vogtle Subcontract, the IAA, and the Bridge Agreement, all of which pertain to work at the Vogtle Plant in Waynesboro, Georgia. Given the Stipulation pursuant to which the Owners agreed to defend and indemnify WECTEC against the Vogtle Claims, WECTEC has no economic stake in the Vogtle Claims. By contrast, Counts III and IV relate to a separate and distinct contract (the VC Summer Subcontract) and project (work at the Virgil C. Summer

Nuclear Generating Station in Jenkinsville, South Carolina), and involve only Defendant WECTEC.  I therefore find that it is appropriate to adjudicate these claims separately and that the reference should be withdrawn as to Counts I, II, V, and VI of Plaintiffs' Complaint and as to the Vogtle Counterclaims.

### B.    *Motion to Transfer*

Having determined that it is proper to withdraw the bankruptcy reference with respect to the Vogtle Claims and the Vogtle Counterclaims, I now turn to Defendants' related request to transfer those claims to the United States District Court for the Southern District of Georgia.

### 1.  Legal Standard

Pursuant to 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  "Where a party seeks to transfer venue for a core proceeding, the applicable statute is 28 U.S.C. § 1412," the bankruptcy change of venue statute, *see Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman*, 306 B.R. 746, 749 (S.D.N.Y.2004), whereas "[t]ransfer of venue for non-core proceedings is governed by 28 U.S.C. § 1404(a)," the general change of venue statute, *ICICI Bank Ltd. v. Essar Glob. Fund Ltd*., 565 B.R. 241, 248 (S.D.N.Y. 2017).  Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Ultimately, however, "[i]n determining whether to grant a motion for transfer under § 1412, courts consider substantially the same factors as for a motion to transfer under 28 U.S.C. § 1404(a)."[8]  *Heyman*, 306 B.R. at 749.

---

[8] One distinction between the two statutes is that § 1404(a) only permits transfer of an action to a venue in which the suit originally could have been brought; however, § 1412 does not contain a similar limitation.  This distinction does not present an issue in the instant case because § 1404(a)'s requirement is satisfied.  Venue is proper in the Southern District of Georgia because "a substantial part of the events . . . giving rise to the claim occurred" there, 28 U.S.C.

> In evaluating a motion to transfer pursuant to § 1404(a), courts consider:
>
> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 27 (S.D.N.Y. 2016) (quoting *Steck v. Santander Consumer USA Holdings Inc.*, No. 14–CV–6942 (JPO), 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015)).

Under § 1412, courts consider six factors to determine whether transfer is in the interest of justice:

> 1) whether transfer would promote the economic and efficient administration of the bankruptcy estate; 2) whether the interests of judicial economy would be served by the transfer; 3) whether the parties would be able to receive a fair trial in each of the possible venues; 4) whether either forum has an interest in having the controversy decided within its borders; 5) whether the enforceability of any judgment would be affected by the transfer; and 6) whether the plaintiffs['] original choice of forum should be disturbed.

*Enron Corp. v. Dynegy Inc. (In re Enron Corp.)*, No. 01-16034 (AJG), 2002 WL 32153911, at *4 (Bankr. S.D.N.Y. Apr. 12, 2002).  Courts have considered the following additional factors to determine whether transfer is convenient for the parties:

> 7) the location of the plaintiff and the defendant; 8) the ease of access to the necessary proof; 9) the convenience of the witnesses and the parties and their relative physical and financial condition; 10) the availability of the subpoena power for unwilling witnesses; and 11) the expense of obtaining unwilling witnesses.

*Id.*

---

§ 1391, and Defendants are subject—and were subject at the time Plaintiffs filed their Complaint—to personal jurisdiction in that district.  (*See* Defs.' Transfer Br. ¶¶ 21–22 (conceding that Defendants are subject to personal jurisdiction in the transferee forum).)

The party requesting the transfer of an action to another judicial district bears the "burden of making out a strong case for transfer." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).  When seeking a transfer pursuant to 28 U.S.C. § 1412, "that burden must be carried by a preponderance of the evidence."  *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990).  Where a transfer is sought pursuant to 28 U.S.C. § 1404(a), the general change of venue statute, that standard is even higher—courts in this Circuit have "consistently applied the clear and convincing evidence standard" to motions to transfer under § 1404.[9]  *N.Y. Marine & Gen. Ins. Co*., 599 F.3d at 114.

## 2.   Application

Defendants argue that the Southern District of Georgia provides a superior forum to the Southern District of New York for litigating the Vogtle Claims and the Vogtle Counterclaims. Plaintiffs counter that Defendants lack a sufficient basis for overturning Plaintiffs' choice of forum.  I agree with Defendants.

As discussed above, *see supra* Part III.A.2, Defendants seek to transfer both core and non-core claims, thereby implicating both § 1412, the bankruptcy change of venue statute, and § 1404(a), the general change of venue statute.  I will therefore perform an analysis that addresses all of the above factors.

---

[9] Because the standard of proof is higher under § 1404(a) (clear and convincing evidence) than under § 1412 (preponderance of the evidence), *see In re Enron Corp.*, 317 B.R. 629, 639 n.9 (Bankr. S.D.N.Y. 2004), it may be an overstatement to conclude, as some courts have, that "the standards for transfer of venue under either § 1404 or § 1412 are essentially the same," *Dynegy*, 2002 WL 32153911, at *2; *see also ICICI Bank, Ltd.*, 565 B.R. at 257. That said, because I find that Defendants have satisfied the more demanding standard of proof applicable to transfers under § 1404(a), *see infra* Part III.B.2, the distinction is immaterial in the instant case.

a. <u>Convenience of Witnesses and Ability to Compel Attendance of Unwilling Witnesses</u>

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). This factor weighs in favor of transferring the action to Georgia. Eight of Defendants' nine party witnesses and all four of the likely non-party witnesses identified by Defendants live or work in the Southern District of Georgia, (*see* Defs.' Transfer Br. ¶¶ 9, 11), and, although the majority of Plaintiffs' witnesses are based in Mississippi, (*id.* ¶ 10), it is undisputed that none of the anticipated witnesses are located in—or anywhere near—New York. *See Dickerson*, 315 F.R.D. at 29 ("[D]istrict courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum." (internal quotation marks omitted)). In fact, every witness identified by either party appears to live closer to Georgia than to New York and would likely incur less inconvenience and expense in traveling to Georgia in order to provide testimony.

With regard to non-party witnesses, since many such witnesses are based in Waynesboro, Georgia, (*see* Defs.' Transfer Br. ¶ 11), those witnesses would be within the subpoena power of the Southern District of Georgia but beyond the subpoena power of this Court. *See* Fed. R. Civ. P. 45(c)(1) (noting that a subpoena of a non-party for trial may only be issued "within 100 miles of where the person resides, is employed, or regularly transacts business in person").

The convenience and accessibility of the Southern District of Georgia for both party and non-party witnesses weigh heavily in favor of transfer.

b.  Convenience of the Parties[10]

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014). Most of the Defendants in this action are Georgia-based entities, although SNC is based in Birmingham, Alabama.[11]  (Compl. ¶¶ 12–16.)  Both Plaintiffs are incorporated in Mississippi and their principal places of business are located in Richland, Mississippi.  (*Id.* ¶¶ 9–11.)  Thus, transfer to the Southern District of Georgia would substantially increase the convenience to Defendants and, because Plaintiffs' headquarters are closer to Georgia than to New York, transfer should not increase the inconvenience to Plaintiffs.  I acknowledge that because two of Plaintiffs' claims (Counts III and IV, relating to the VC Summer Subcontract) will be litigated in the United States Bankruptcy Court for the Southern District of New York, transferring the claims that have been withdrawn to Georgia will require Plaintiffs to litigate in two geographic locations.  However, even if all of Plaintiffs' claims were to remain in the Southern District of New York, for the reasons stated above, *see supra* Part III.A.2, one set of claims (Counts III and IV) would be litigated in the Bankruptcy Court while the other set (Counts I, II, V, and VI) would be adjudicated by this Court and, as a result, Plaintiffs would still be required to litigate in two different courts and to make separate trips to New York to prosecute each action.

---

[10] Separate and apart from the convenience of the parties, courts analyzing motions to transfer also consider the "relative means of the parties."  *Dickerson*, 15 F.R.D. at 27.  Both Plaintiffs and Defendants have determined that this factor is not relevant to their dispute, (*see* Pls.' Transfer Br. 9 n.2; Defs.' Transfer Br. ¶ 24 n.8), and I therefore decline to consider it.  ("Pls.' Transfer Br." refers to the Memorandum of Law in Opposition to Defendants' Motion to Transfer Case to the United States District Court for the Southern District of Georgia, filed June 27, 2018, (Doc. 14-1).)

[11] Defendant WECTEC is a Louisiana corporation with a principal place of business in Pennsylvania, (Compl. ¶ 17); however, because WECTEC has no stake in litigating the Vogtle Claims or the Vogtle Counterclaims, (*see* Doc. 8-4), the convenience of WECTEC warrants little or no weight in the transfer analysis.

Based on the above, I conclude that, on balance, this factor weighs slightly in favor of transfer.

### c.   Location of Evidence and Locus of Operative Facts

Although the factors of location of evidence and locus of operative facts have become less important in the "modern era of faxing, scanning, and emailing documents," *Dickerson*, 315 F.R.D. at 30, they also weigh in favor of transfer.  None of the relevant evidence is located in New York and the materials and work that Plaintiffs provided and performed relating to the Vogtle Project—and for which they are now seeking payment—were all ultimately intended to be delivered to, installed in, and/or performed in Georgia.  Even if all of the relevant documents could be stored and transferred electronically, Defendants make an unassailable argument that it would be impossible to inspect some of the physical evidence at issue—i.e., components of the two nuclear reactors—outside the Vogtle facilities in Georgia.

Plaintiffs counter that many of the underlying events took place in either Mississippi, Alabama, or North Carolina, (*see* Pls.' Transfer Br. 16–18), but that does not alter the fact that the dispute is far more closely tied to Georgia than to New York.[12]  In fact, the only ostensible connection to New York is that WECTEC's bankruptcy proceedings were filed here.  However, since WECTEC no longer has any economic stake in the Vogtle Claims, (*see* Doc. 8-4), that connection is of little importance.

---

[12] While Plaintiffs argue in their opposition that the Southern District of Mississippi would be a more appropriate venue than the Southern District of Georgia, (*see* Pls.' Transfer Br. 19–21), I decline to address those arguments as a request that the action be transferred to Mississippi is not properly before me.  *See* L.R. 7.1(a)–(b) (requiring "an opposing party who seeks relief that goes beyond the denial of the motion" to file a "notice of motion . . . specify[ing] the applicable rules or statutes pursuant to which the motion is brought, and [specifying] the relief sought by the motion").  The relevant comparison here is between the Southern District of New York and the Southern District of Georgia.

d. <u>Familiarity with the Governing Law and State's Interest in Deciding the Controversy Within Its Borders</u>

Because "federal courts routinely apply the law of other jurisdictions," a court's familiarity with the governing law often merits little weight in the transfer analysis; however, "there is a state interest in deciding local controversies within its borders by those familiar with its laws." *Dynegy*, 2002 WL 32153911, at *7. Much of the conduct relevant to this dispute occurred in Georgia and both the Vogtle Subcontract and the Bridge Agreement are governed by Georgia law.[13] (Defs.' Transfer Br. 21.)

Moreover, disputes between some of the same parties regarding construction of the same two nuclear reactors that are the subject of this action were litigated for several years in the Southern District of Georgia before they were settled in 2016. *See, e.g.*, *Stone & Webster, Inc. v. Ga. Power Co.*, No. 1:12-mc-13 (S.D. Ga.); *Ga. Power Co. v. Westinghouse Elec. Co.*, No. 1:12-cv-123 (S.D. Ga.); *Ga. Power Co. v. Westinghouse Elec. Co.*, No. 1:12-cv-167 (S.D. Ga.). Therefore, courts in the Southern District of Georgia are not only arguably more familiar with the law governing this dispute but also more familiar with the underlying facts and litigants. Finally, the fact that the Vogtle Project is "a local project with significant local effects" also counsels in favor of transfer. *See Stone & Webster, Inc. v. Ga. Power Co.*, 965 F. Supp. 2d 56, 63 (D.D.C. 2013) (dismissing complaint filed in the District of Columbia and concluding that the

---

[13] The IAA, by contrast, specifies that it "shall be governed by the laws of the State of New York" and that "[e]ach Party consents to the exclusive jurisdiction of the Bankruptcy Court to resolve any dispute arising out of or relating to this Agreement." (IAA, ¶ 24.) However, the IAA—which is an agreement between the Debtors and the Owners—also specifies that "[n]o term of this Agreement is intended to benefit any person other than the signatories hereto nor will any term be enforceable by any other person." (*Id.* ¶ 23.) Plaintiffs contend that the forum selection clause in the IAA supports denial of Defendants' transfer motion; however, it appears clear from the face of the IAA that it governs only claims between the Debtors and the Owners and does not extend to claims by Plaintiffs. Indeed, Plaintiffs supply no legal or factual support for the notion that they are intended beneficiaries of the forum selection clause. The IAA's choice of law and forum selection clauses therefore do not counsel against transfer of this action.

Southern District of Georgia offered a superior forum in which to litigate dispute relating to the same two nuclear reactors at the Vogtle Plant).

e.   <u>Plaintiffs' Choice of Forum</u>

Although a plaintiff's choice of forum is generally entitled to "substantial consideration," *Warrick v. Gen. Elec. Co. (In re Warrick),* 70 F.3d 736, 741 (2d Cir.1995), "the emphasis that a court places on plaintiff's choice of forum diminishes where the facts giving rise to the litigation bear little material connection to the chosen forum." *In re Chateaugay Corp.*, 2002 WL 484950, at *9 (internal quotation marks omitted).  This is certainly the case here, where the only connection between the dispute and Plaintiffs' chosen forum—i.e., WECTEC's pending chapter 11 proceedings—will have no impact on the litigation of the dispute given the Owners' agreement to defend and indemnify WECTEC against the Vogtle Claims.  Additionally, not only did the "operative facts of the action" occur outside New York, but New York is not Plaintiffs' "home forum," which further diminishes the weight assigned to this factor. *Dickerson*, 315 F.R.D. at 32.  Finally, Plaintiffs' claim that they chose this forum at all is dubious at best and borders on specious, since it seems that Plaintiffs filed their adversary proceeding in this district solely because the underlying bankruptcy proceedings had already been filed here.  New York is more properly viewed as Westinghouse's chosen forum—not Plaintiffs'—and the only Westinghouse party in the adversary proceeding, WECTEC, has joined in the instant transfer request.

f.   <u>Trial Efficiency and Interests of Justice</u>

I find the remaining factors of trial efficiency and the interests of justice to be neutral. Although "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination" of related adversary proceedings, *Heyman*,

19

306 B.R. at 750, where, as here, "adversary proceedings . . . involve parties and issues that are discrete [from the underlying bankruptcy] and readily identifiable," considerations of a debtor's "disparate assets and creditors [which] justified retaining the [main bankruptcy proceeding] in New York . . . are not relevant." *Dynegy*, 2002 WL 32153911, at *4.  The claims and parties involved in the Vogtle Counts are—by virtue of the Stipulation between WECTEC and the Owners, (Doc. 8-4)—entirely separate from the underlying bankruptcy proceedings and the adjudication of those claims in a separate location will not create any inefficiencies. Furthermore, "there has not yet been a significant investment by the Southern District of New York in [this adversary proceeding] in terms of either time or work." *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000).

Finally, Plaintiffs do not contend that transferring the action to the Southern District of Georgia would either prevent them from receiving a fair trial or affect the enforceability of any judgment issued in the matter. *See Dynegy*, 2002 WL 32153911, at *4 (listing these among the factors courts consider in determining whether transfer pursuant to § 1412 is in the "interests of justice").  In other words, Plaintiffs do not identify any adverse effect that transfer would have on their trial rights.

I therefore conclude that Defendants have demonstrated by clear and convincing evidence that all factors relevant to the transfer analysis under § 1412 and § 1404(a) are either neutral or weigh in favor of transferring the Vogtle Claims and the Vogtle Counterclaims to the Southern District of Georgia.

IV.    **Conclusion**

For the foregoing reasons, Defendants' motion to withdraw the bankruptcy reference as to the Vogtle Claims and the Vogtle Counterclaims, (Doc. 1), is GRANTED.  Defendants' motion to transfer those claims to the United States District Court for the Southern District of Georgia, (Doc. 7), is also GRANTED.

The Clerk of Court is respectfully directed to terminate the open motions at Documents 1 and 7 and to transfer the Vogtle Claims—Counts I, II, V, and VI—as well as the Vogtle Counterclaims, in the adversary proceeding, No. 18-1016, to the Southern District of Georgia.

SO ORDERED.

Dated: March 25, 2019
        New York, New York

Vernon S. Broderick
United States District Judge